### Bennie Green v. The State.

No. 8072. Decided March 5, 1924.

Rehearing denied April 16, 1924.

**1.—Rape—Insufficiency of Evidence.**

Where, upon trial of rape upon a female under age, the evidence did not comport with human experience generally, regarding the matter under investigation, and the evidence is not sufficient to support the conviction, the judgment must be reversed and the cause remanded.

**2.—Same—Rehearing—Precedent—Practice on Appeal.**

The Court of Criminal Appeals may reverse the judgment in a criminal action, as well upon the law as upon the facts and the present case exemplifies the wisdom of the statute. The precedent cited by the State is not the rule which governs in all cases. Qualifying: Hubbard v. State, 147 S. W. Rep., 260.

Appeal from the Criminal District Court of Harris County. Tried below before the Honorable C. W. Robinson.

Appeal from a conviction of rape upon a female under the age of consent; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Fuller & Fuller*, for appellant.

*Tom Garrard*, Attorney for the State, and *Grover C. Morris*, Assistant Attorney, and *J. Dixie Smith*, District Attorney, for the State. Cited: Le Los Santos v. State, 146 S. W. Rep., 919; Walls v. State, 153 id., 130; Reese v. State, 220 id., 1096; Black v. State, 151 id., 1053; Porter v. State, 60 Texas Crim. Rep., 588 and cases cited in the opinion.

HAWKINS, Judge.—Appellant is under conviction for rape, his punishment having been assessed at ten years in the penitentiary.

The parties are all negroes. Prosecutrix is a girl seventeen years of age. Appellant had married her mother about four years prior to the date of the alleged offense. The State relied solely upon prosecu-

trix to make out its case and therefore upon her story this conviction must stand or fall. Her testimony follows:

"At the time that this occurred my mother had gone to work. My two little sisters were at the Catholic Church. It happened early in the morning, about six o'clock, or around that time. . . . I was in bed, and I got up and was going to say my prayers, I kneeled down to say them, and I saw somebody behind me raising my gown and doing a dirty act, I looked around to see who it was and it was my stepfather. . . . . He grabbed me around the waist and tried to put his privates in mine and do what he wanted to do. I tried to make him stop but he wouldn't and I told him that I would tell mama, and he said he would fix me. I cried and he stopped then and left and in a few minutes afterwards slammed the door and went away. His private male organ penetrated my female organ entirely. As a result of that intercourse I gave birth to a baby. It was the result of that intercourse that I had with my stepfather at that time. I didn't give my consent for this intercourse. . . . I didn't let him have intercourse with me, I tried to prevent it, but I was too weak and I could not prevent a strong man like that, I tried to stop it but he went on anyway. He had this hand around my waist and had his privates with the other hand trying to put it in. I was kneeling down with my hands like this and with my face on the side. *He didn't push me over, I was kneeling down with my knees on the floor and my hands on the bed and he kept on that way until he got what he wanted. .I guess he completed his act, finished it.*"

The record shows appellant to be over six feet tall. Prosecutrix avers that this was the first and only act of intercourse she ever had with any man. She never reported the alleged rape to her mother or anyone else until she was discovered to be in a state of pregnancy. She says the reason she did not report it was because she feared appellant, and that he kept her intimidated by making "ugly eyes" at her.

When we read this most remarkable account of how, and the position in which, this alleged forcible act of intercourse took place we recall the words of Horatio, commenting on an incident he did not understand, "But this is wondrous strange," and Hamlet's reply: "There are more things in heaven and earth, Horatio, than are dreamt of in your philosophy." One test for determining the truth, or otherwise, of evidence, is, does it comport with human experience generally regarding the matter under investigation? By this rule surely prosecutrix's story is, to say the least of it, slightly out of line.

Under Article 939, C. C. P. this court may reverse a judgment upon the facts; we hesitate to interfere with the verdict of the jury in any case, but it is our duty to do so when there is not sufficient testimony to support it. Hays v. State, 86 Texas, Crim. Rep., 469, 217 S. W. Rep., 938. Though the verdict should not be lightly annulled it is

our duty to set it aside and order another trial when the evidence, viewed in its strongest light from the standpoint of the State, fails to make guilt reasonably certain. Jolly v. State, 87 Texas Crim. Rep., 288, 221 S. W. Rep., 279; Pierson v. State, 93 Texas Crim. Rep., 242; 246 S. W. Rep., 1041; McCollum v. State, 93 Texas Crim. Rep., 235, 247 S. W. Rep., 283; Rochetszky v. State, 94 Texas Crim. Rep., 423, 251 S. W. Rep., 232. See also the authorities collated under Note 17, Article 786, page 2567, Vernon's 1922 Supplement.

Appellant denied that he ever at any time had or attempted to have intercourse with prosecutrix. She avers that only one act occurred and that it was accomplished under the unbelievable conditions heretofore stated.

We can not in good conscience permit the judgment of conviction to stand, and the same is reversed and the cause remanded for another trial.

*Reversed and remanded.*

### ON REHEARING.

### April 16, 1924.

MORROW, PRESIDING JUDGE.—Referring to the opinion of this court by Judge Prendergast in the case of Hubbard v. State, 147 S. W. Rep., 260, the District Attorney quotes: ''The jury of twelve fair and impartial jurors, after hearing all of the evidence, seeing and observing all of the witnesses and the manner of their testifying, believed the state's witnesses, and that the appellant was guilty beyond a reasonable doubt. The learned trial judge also heard all the testimony, saw and heard the witnesses, and, by overruling the motion for a new trial, based on these grounds also held that the testimony was sufficient to sustain the verdict. Under these circumstances, we also sustain the verdict.''

That this is not the rule which governs in all cases is manifest from the legislative declaration in Art. 939, C. C. P., which reads as follows: ''The court of criminal appeals may reverse the judgment in a criminal action, as well upon the law as upon the facts; but, when a cause is reversed for the reason that the verdict is contrary to the weight of evidence, the same shall in all cases be remanded for new trial.

The present case exemplifies the wisdom of the statute. At least, such is the opinion of this court upon whom the responsibility of the ultimate decision rests.

With due deference to the opinion of the District Attorney to the contrary, the conclusion revealed on the original hearing comports with our conception of the law applicable to the present case.

The motion is overruled.

*Overruled.*